I'll call the case of Martz v. Day Development Company, and Mr. Marcus, you can begin when you're ready. Thank you, sir. Good morning. If your honors please, we are here today to challenge a decision that was rendered by the District Court in Baltimore. There are two principal bases upon which we challenge the court's ruling. One is on what we believe to be an improvident grant of summary judgment in the case, and then the second is the calculation of damages where we have a contract that embraces all of the terms that are necessary. I'm not going to spend a lot of time here. There were motions for summary judgment that were filed. The court granted the summary judgment based on the court's perception that there was a breach of contract. The issue here is whether or not the court improvidently granted summary judgment on the two breach of contract counts. The court has had an opportunity to take a look at what the original allegations in this case were, and the original allegation for breach of contract related to the fact that Day Development had not taken steps, actually mandated steps, to market the property and or to develop the property. As the court has seen, there are two agreements. They're very similar in form. One was drafted and executed in 2003. The second was in 2005. There were two parcels of property that were at issue. The District Court went through some examination of what the underlying facts were and came to some conclusions which probably are a good roadmap. There are a couple of things that I would like to point out to the court before I get into the nitty-gritty of this. These properties are located west of Frederick, the center part of Frederick, Maryland. They are properties that are on the fringe of development, and this was a planned neighborhood development that had been scheduled. The two parcels at issue here were not originally scheduled for development. As the court is aware, in many developments like this, there are schedules and phasing that goes on. The two parcels in this case, one was originally planned to be a domiciliary care parcel, and what that basically means is as part of the planned neighborhood development, the original plan which preceded Day Development was actually processed by Mr. Marks and his group, incorporated this domiciliary care parcel, and the domiciliary care parcel was essentially assisted living for seniors and the like to complement the community. The second parcel... So, counsel, if I could interrupt you here, and I appreciate you going into that background, but I gathered a good bit of that from the briefs, so I'm going to kind of dive into the contract if you would help me with that. As I understand your argument, first of all, you think the contract is clear and unambiguous in your favor? I think it's clear and unambiguous in these legal proceedings. To the extent that it favored us or favored the appellee, what it did... Yeah, I didn't mean that. That's fair. And your argument, as I understand it, is that, and I'm just going to talk about the consulting services agreement because it seems like it applies to both ones, but your argument is that the compensation for obtaining approvals, there's two methods of that and they're 4A and 4B, correct? Yeah, I don't remember the paragraph because they're two different agreements, but they're two different methods. That's fine. That's fine. And so, the question I have kind of relates then to C, because C then goes and says again that in the blah, blah, blah. And then it refers to the, you know, in the first subsection to the sale, kind of which tracks 4A, and the second subsection to the building, which tracks 4B. And if it stopped there, I think your argument would be pretty powerful. But then it's got this, you know, third subsection, which says January 1st, 2015. And it says that they get paid on the earliest of these three events, which seems to contemplate you could get paid on January 15th, you know, even if those two other events, sale or building, hasn't happened. So, how do you square the fact that 4C calls for compensation before sale or before development with your notion that those are, you know, contingencies that have to occur? So, what happened here is this. This is a development, and obviously it's a long-term project, long-term from the standpoint that the commercial parcel that was here could not be permitted, could not do it. It was prohibited unless and until infrastructure and roadways were in place. The trial went on. You couldn't get a building permit. And as a court, based on your questions, Judge, it appears that the court understands the difference between entitlements, which would be a paper approval on a plan versus a building permit, which requires the installation of all of the infrastructure. So, it's not just... Go ahead. I'm sorry. No, no, no. I got your argument. And I think that, I mean, you know, you may have a very good argument that there, you know, it was either impossible or very, you know, economically unwise to, you know, to sell or build at that time. But I'm just trying to read the contract. And the contract seems to say, I mean, there's nothing expressed that says you get compensated on January 1st, 2015, so long as it's not unfeasible to either build or sell. So, it seems like you're trying to create a contingency in there that isn't there. So, there are different ways to be compensated for service. This is a consulting services agreement. The compensation that was due under this agreement arose in two spheres. One, if there was an out sale of the property during that period. If there's an out sale, everybody understands whatever the value is, it's all determined at the closing, settlement goes on, and we know exactly how much money is there. If indeed the purchaser, day development, elected to develop the property, to go ahead and get building permits and to build whatever, whichever of the two projects were there, if they intended to do that, then there was a formula that said what the valuation would be at the time that those events took place. So, what's the point? Councilman, I think I understand that your arguments about the two formulas, and I think that's a strong argument, but what purpose then does 4C, three small i's, serve? So, Judge, what I would tell you is, when this case was first filed, there were other counts in the complaint, one of which was quantum Maryland. So, let's assume that this is a traditional services agreement, a consulting services agreement. Case says, this gentleman went out, was a resident in Frederick, had opportunities in order to advance some land planning changes. You've got the domiciliary care. You know, I want to cut in, because I'm interested in the questions that Judge It looks to me, if you read the contract and you look at paragraph four, that's the paragraph we're dealing with. The very first sentence of paragraph four says, in the event that March obtains the approvals, then he's going to be entitled to payment as indicated. So, that's the condition precedent obtaining approvals under the contract. Then it says, it provides two methods of calculating the compensation, and it does not provide a method of calculating the compensation if nothing happens. It just provides in case there's a sale or there's building. And then C says, when the compensation has to be paid, and it says the earlier of one, two, or three, and three happens to be January 1, 2015. So, you start with four, first sentence, did he get the approvals? Everybody consents, agrees he got the approvals. So, therefore, the contract says he's entitled to compensation. Now, the question is how much? A and B provide calculations to how much in one contingency and the other, and then C provides when you get the calculation. And with respect to the permits, it'll be on that date. With respect to sales, it'll be on that date. And if it doesn't, neither one of those happens, then it's on January 1. It says the earliest of those three. And so, now the contract leaves open one big critical component, and that is what if there is no sale and there's no development with permits? How do you compensate for getting the allowance? And the district court said that was an omission in the contract and applied unjust enrichment. And instead of following the compensation pattern in the agreement, the court said, I'm going to give Marks the fair value of the approvals. Now, that's the structure of the way the contract works. Now, you can argue defenses, but I'd like you to first start with the contract because the contract is a consulting contract, and it looks to me like Mr. Marks is entitled to compensation if he got the approvals. And he got the approvals, so the real open question is, how do you compute his compensation? And since the two contingencies did not occur, and they don't have a formula for when you just hold on to the property, the court said, well, there is the contract doesn't provide the amount, but he doesn't go out of way scot-free. I mean, we have a million dollars worth of value given to the property. And so, the court said, I'm going to determine the value of the property before the approvals, and I'm going to determine the value of the property after the approvals, and give Marks the differential. And that's the long and short of what the district court did. And so, you have defenses, and you say, number one, the development could not have occurred. Well, in that case, you come under the January 1 payment date, and he did see the approvals. So, the only open question, you have the fact he's entitled to compensation, you have the date for payment, but you don't have how to compute that payment in the contract. And that's where the court supplied unjust enrichment, which now takes you out of the contract, and goes to the value of the approvals. And the court determined that by the differential between value of the property before approval, value after. Isn't that what the district did? It did, but the problem with the analysis is, if you look at 4B, 4B applies, gives Marks and Fink the approvals, and then there's a conjunctive and, and DDC obtains building permits, okay? That was required. Now, you couldn't get a building permit. That's required for compensation calculated in that fashion. The introductory clause of the policy says, shall be calculated. And so, if it occurs that you get building permits, then he gets a, he gets a compensation as in 4B. If he, if he sells the, if the property is sold, he gets compensation in accordance with A. If he just, if you, if the property is just held, and there's no sale, no permits, it's silent on the compensation. But then it says on, on C, it says then when the payment is due, and it says with respect to sale when the payment's due, with respect to permits when it's due, and if neither one of those occurs, it says by January 1, 2015. Now, as I point out, there's no calculation provided, or if you just hold the property. So, the issue here is, when this suit was filed, a Quantum Merowith claim was made. The value of the services that were provided by Mr. March, it was contained in the first complaint at Count 4, Quantum Merowith. It related to the valuable services that he provided. So, everything that we've just gone over was, what is the value of Mr. March's service? And so, at that point, if this analysis is to apply, and we know what the law in Maryland is, I suspect it's... Well, I don't know if you do know what the law in Maryland is, because the Maryland law says, if the contract omits a provision that related to the subject, that the court can use unjust enrichment. And that's what the court relied on. And there's case law that says, while that is a possibility, there are no cases under these kinds of facts that would have abused unjust enrichment. If the court takes a look at paragraph C, and goes to the section right underneath it. And what it says is, obligations of DDC to pay compensation to March shall survive the sale of the commercial parcel and any termination of this agreement. So, what happens here is, if you took the position that it was January 1st, 2015, the very next paragraph says, that that obligation survives the termination of the agreement and shall be binding on the transferee after that. There was a lien that was reported as a result of this, granting an equitable interest to Mr. March. So, to the extent that Mr. March was not out of luck, he had the ability, to receive compensation under this agreement at whatever time the properties either were sold or permitted. Or by January 1, you leave that out. In other words, if it's not sold or not permitted, then you have to pay by January 1. Let's stay with the contract instead of the yearly in time. So, what happens is, in this case, the plaintiffs, the affiliate was asked for discovery for what the value of the claim was. They identified an expert. And all expert discovery, all of the issues that were related to how those appraisals were done, there is no appraisal, there was no evidence that was put forward on what the fair value of the property was. Fair value, in this case, would be as is, where is. In this case, both of these properties were unentitled and both of the properties were not subject to building code. So, what you had is farmland. It was farmland before this contract, it was farmland after. So, the question then becomes, what is... But it was farmland after with the approvals. In other words, before it didn't have the approvals and after it had the approvals to put on the development. And there was an appraisal the district court relied on to show the value with the approval. So, the district court relied on a... There are two appraisals. One, the plaintiff's appraiser was completely disregarded by the court, completely. That appraiser came up... And disregarded. That appraiser came up with a number that was... $3.9 million. $3.79 million. And this goes to the questions on the issue of what the damages are. Their appraiser comes in and says, the value of the condominium property was $3.7 million. The contract and the damages that were calculated would have had a priority of $1.89 million. So, what that basically meant is, whatever that number was, whatever number he came to, for the entitled property, take off $1.89 million. Well, see, taking off $9.9 million includes closing costs. The original value was $1.4 and some change. And you added closing costs to get it up to $1.89. But the court said, I'm looking at the differential in the values of the property. We're not computing damages. We're not computing damages. We're computing the fair value of the services based on the differential in property values. So, if the fair value determined by the plaintiff's expert was $3.79 million on 1-1-15, January 1st, 15, that's a value that he had as entitled and building permits issued, which means it was more valuable than it would have been as raw land before it was entitled. That $3.79 million under this contract would have been reduced by $1.89 million. Okay? So, if you... No, I'm not okay with that because you're using a $1.89 million figure, which is not justified by the record. So, I guess part of this argument goes to the issue of whatever the expectation. If that is the argument... Mr. Marcus, over your time, but I do have a question about, because you raised this twice already, you said there was a quantum merit claim in the complaint. You said it twice, and I'm still trying to figure out exactly what the relevance of that is to this case. I mean, initially when I read these briefs, I thought you were suggesting that Mr. Marks was out of luck and he wasn't entitled to any compensation, but that can't be right. You're now saying, I think, that he may be entitled to compensation, but he actually has to wait until one of these two contingencies actually comes to the fore. So, it would seem to me that he did work. He would be entitled to some compensation, right? So, the question is how to calculate that. So, what's your view as to what that amount should be? The amount... We asked him in discovery for the value of his services. He had a quantum merit claim. It was contained in the original complaint. It sought compensation for the value of his services to make sure that he was in fact compensated. Mr. Marcus, Mr. Marcus, that is a breach of contract theory of damages. The court did not give damages. There's a lot of difference between giving the benefit. The court said, I'm not giving you the value of the approval. What the court said, I'm giving you the benefit of how the defendants were benefited, and they were benefited by the contribution that the approvals made to the property. That's how they were benefited. That's not a damage theory. That's an unjust enrichment theory. So, Judge, in order to make an unjust enrichment analysis, what has to happen is there has to be some kind of determination made of what is the value of the property before the benefit was conferred, and what is the value on the date that the unjust enrichment is to be measured. So, you got to look at those two dates. We asked questions about what those dates were for January 1st, 2015, and their expert came up with a number of 3.79. Our expert came up with 2.45 million dollars. And so, if you took those numbers, what basically happened here is from going from an unjust enrichment, this was a lottery. Because by the time the court got done, the court awarded more money than what the claim was for the alleged breach of contract damage. Okay. We'll continue this on your rebuttal. You've reserved time and we've let you go on for a while. And I've blown through my rebuttal. But let's hear from Rich Powell. Thank you. May it please the court, Leslie Powell, on behalf of the Plano Faculty of Crime and Marks. We are obviously requesting that this court affirm the judgment of the district court on Mr. Marks' unjust enrichment claim. The court determined that the CSA and what we refer to as the ACSA are binding contract documents and that if Marks obtained the change in land use, which he undisputedly did, that he was then entitled to compensation. So, Ms. Powell, I hate to get you off track from the get-go, but you heard some of my questions. I think the best argument you have is C3 and the language that says he gets paid at the earliest of. Because I have trouble understanding what you're saying. I can. Can you all hear me now? Yes, we can. And you were in the middle of asking Ms. Powell a question and we heard almost none of it. So, I don't know if you remember the question, but why don't you try again? Yeah. Okay. I do. Counsel, to me, the key question is does this the property has neither been sold nor developed? And I think the best argument you have for that is that 4-3 makes January 1st, 2015, a date for which compensation is due. And that can happen before those other two events. So, I think that helps you a great deal. But the part that I'm concerned about is that at the leading end of 4-C, it talks about how you're compensated. And it has three words that may sound insignificant, but they are as described herein. And so then I'm like, what does that mean? And it means you get compensation, but only as described herein, or at least that's an argument. And the only types of compensation described herein are the formulas in 4-A and 4-B. So, to me, I have one provision, the January 1st, 2015 date combined with the earliest of that suggests you get paid if you do this approval. But I got this language that, as described herein, which arguably suggests you only get paid as the contract provides. And it doesn't provide any basis, any method of calculations there. And so, actually, I'm wondering why that isn't an ambiguity. I think, Your Honor, well, the answer to that question is it's not ambiguous because there's a complete gap. And so, maybe I'm not, you're shaking your head, so I'm not sure I'm understanding. Well, I don't mean to shake your head. I mean, there's a gap only if the contract clearly says you get paid, whether or not it's developed or sold. What I'm wondering whether the as described herein language at least creates an ambiguity that you don't get paid if it's not developed or sold. Or rather, another way of saying it is sure you get paid on January 15th or January 2015, but the way we calculate it is to go back to 4-A or B, so your calculation is zero. So, Your Honor, no, my answer to that question is if you look at the language of 4-C, it says in the event MARTS obtains the approvals for the proposed use as referenced in this agreement, compensation due from DDC to MARTS as described herein, which are the three words you're talking about, shall be due and payable upon the earlier to occur one of the three following. And that compensation shall be due, so it doesn't mean zero. The contract could have easily said, Your Honor, if we decide to sit on this property, because that's what they did, if we decide to sit on this property, then you get nothing even though you went to all this effort. And that is simply an illogical conclusion. Well, so I think that's a good point. It could have said that and then the defendant would be in good shape. Likewise, it could have said, you get paid on January 15th no matter what. And, you know, I don't, you may say it clearly says that. I think the as described herein, let me just ask you this, what does as described herein mean? So, well, Your Honor, that actually would go to my conditional prosecutorial, but that the court would have had to have used one of these two formula. But what it does say is that he shall be paid upon one of the following three events. And that is separate from the formula. And that's why the court found that unjust enrichment was appropriate because it was missing essentially a material term with respect to item number three, because it's unequivocal that it says you shall be paid either when you sell it, when you develop it, or on January. I gather you claim, in other words, the very first sentence in paragraph four sets forth the critical language, which says, if he obtains the approvals, he shall be paid. And then the next two paragraphs say, and it says calculated as follows. And the next two paragraphs address how it's calculated. And they have a calculation for when it's sold and a calculation for when it's developed. But they have no calculation if neither occurs. And then the third, the C, as Judge Quattlebaum noted, is when payment is. And it says the earlier of those three events. But the calculation for if those events don't occur, the calculation is omitted, although the time is not. The time would be January one. That is calculation, which should have followed the four A or B. There should have been a calculation if it's not sold or not permitted, then you calculate as follows. With the omission of that calculation, the district court applied the Maryland law, which says when you have such an omission, you do unjust enrichment. But I gather that's where the governing language is actually the first sentence of four, right? Yes. Unconditionally, it says upon approval, he's entitled to payment compensation. And then there's two things they have to do. How much and when and how much is addressed in the next two paragraphs and when is addressed in C. That is correct. And I just don't see why. I mean, Judge Niemeyer's questions I think are fair. And but I just, you know, beginning language. Yeah. I'm sorry. Go ahead. I was just assuming that's where the district court rule. I'm not suggesting that's what we ought to do. But I think that's the basis for the district court's ruling. And if we understand that, then we can decide whether it's right or wrong. But I think the there is this is a well-drafted document. And I think you have to make heads and tails of paragraph four in its entirety, the function of everything. And I think there's a critical point is the very first sentence says, if he obtains the approvals, he gets compensation. So the 10 of the parties is pretty clear and unambiguous. He's going to get paid if he got the approvals. Now, the question is how much and when. And the district court said how much is missing. That's right. Can I follow up on this? So, clearly, this contract was missing that critical piece that would calculate the payment due if neither one of the two things that were occurred. So the question is how to remedy that. And the district court decided that it would go with an unjust enrichment calculation. But I suppose it could be equally as fair to say that, well, he's entitled to the time and value of his services on an hourly basis for the work that he put into it. So why is that not? And I think this goes back to your colleague's claim about quantum merit and the like. So how did we arrive at a calculation that was based on the fair market value of the property on X date, as opposed to just the time and value of his services on an hourly basis? So the answer to that, Judge Diaz, is twofold. One, the plaintiff's entitled to select his remedies, his claims. And we did not pursue quantum merit. We pursued unjust enrichment. And the reason we pursued unjust enrichment was because there was a gap in the contract. There was a material term missing with respect to the calculation that would apply, the methodology that would apply if the property were sold on January 1, 2015. And so... That strikes me as a pretty arbitrary date. And is it fair to say that the other side, the opposing side, was unjustly enriched if neither one of the two things that they bargained for in the contract had actually occurred? That is the change of the... What is it? Hold on a second. The sale of the nursing care parcel and the development of the property. Neither one of those things actually came to pass, right? So what... Go ahead. Your Honor, they were in complete control of what would come to pass. And the evidence was unequivocal that they could have developed the domiciliary care parcel. And they could have sold it as well. And they could have also sold the commercial parcel. And there is absolutely no dispute with respect to that. Their own appraiser testified that, yes, these properties could be sold. The $4.2 million for the domiciliary care parcel and the $1.1 million for the commercial parcel could have been sold within one year. And the commercial parcel contract is in fact different than the domiciliary care because that didn't require building permits to be issued. But that required was a finished lot value. And the judge in fact noted in her opinion that there was ample evidence that this could have in fact been done. And so it's unfair to punish Mr. Marks for something that he had no control over. Because at the time they executed the ACSA, he deeded his interest in this property at the same time as that contract to a day development company. At that time, Mr. Marks no longer had any control. And Mr. Marks had not been compensated for the commercial care parcel. And that contract provision was simply carried forward because that's why there was no stepped up deduction, if you will, in the ACSA. And so, no. Let me go back to Judge's question, the question of quantum merit versus unjust enrichment. I understand the difference. I gather quantum merit focuses on the value of the services he provided. And unjust enrichment measures the benefit that the other side got. You focus totally on the benefit. So, if it costs him $5 to do it, a quantum merit might award him $5. But if the benefit yielded $100 to the defendants, then unjust enrichment would give him to get back the $100. My question comes to the initial question that are you entitled to select either method? Because both of them were in play at one point, weren't they? Well, they were in play, Your Honor. But I would suggest that in this case, what the bargain for deal here was, as indicated in the contracts, even though she applied unjust enrichment, was that Mr. Marks would in fact get the benefit of his bargain for the enhancement of value in property. Because that's what they agreed upon. The January 1 date did come and go. There's no question. And there's no question that he didn't get paid. But there's also no question, Your Honor, that Day Development Company didn't do anything to advance the ball when it could have. And in fact, it's uncontested that the principal of DDC, Mr. Day, told Mr. Marks, I'm not going to pay you. I'm going to take the property from you. And there was complete radio silence from the other side. I mean, that is... Now, if the property had gone through one of the two contingencies discussed in the contract, that is, either it was developed or sold, Mr. Marks would get half of the proceeds that... Do I understand that? Yes. Yes, Your Honor. All right. So that might be a reason for justifying the unjust enrichment because he had an interest in the value of the properties. Correct. And if his services enhanced the value of the properties, that's a benefit that they obtained and the court awarded back. And that's absolutely right, Your Honor, because the reported agreement, the third piece, the third agreement that these parties had relating to this whole project, explicitly said that Marks had an equitable interest in the property and an equitable interest in the proceeds. And I think that that makes it clear that this type of Mr. Powell, can I... I'm sorry, just to follow up on that. So your colleague on the other side suggested that your client's remedy was really to wait however long it took, apparently, according to them for one of these two contingencies to actually materialize. And that's problematic, I think, because there's got to be some endpoint to this. But on the other hand, you know, I suppose if they made an argument that, well, you know, the market at this point is terrible. It's just not conducive to selling these properties. And there's no point in developing a condominium because no one's going to rent them. It's better for us to wait until the market improves. But your point, is your argument that it doesn't matter? You know, a contract is a contract and we're entitled to be paid. Is that your... Well, actually, Your Honor, that is in fact the law. Just because somebody thinks he may have made a bad bargain doesn't mean that you get to walk away from your contractual obligations. And if I could just finish my answer, Judge Niemeyer. Yes. Thank you. The contract itself allowed or took into account market fluctuations because if, for example, the appraisal had come back, you know, the non-litigation appraisal, if you will, that appraisal had come back and said, well, yeah, it's only worth two million bucks, then we'd be talking about a lot less money. And so that formula or the analysis, if you will, taken by the judge accounted for market forces. And so everybody would have just made less money and a development company could have just sat upon it. And I know I'm out of time, so. All right. Thank you, Ms. Powell. Mr. Marcus. If Your Honor, please, a couple of things need to be hashed out here. There is no doubt that the property under the rezoning domiciliary care to the parcel of 189 condominiums was not saleable. And there is no doubt that whatever it was in terms of the value that Mr. Mars brought to the property, all of the appraisals, all of the appraisals were predicated on a completely different concept. They wound up shifting from condominiums because they were not marketable in that market at that time. And the appraiser or the plaintiff had to use a completely different style and a different plan for the community because the condominiums were not saleable. Now, so when we say, OK, what is the value of the work that Mr. Mars did? Every one of the appraisals. I don't think I don't think that's the issue. It's not the value I thought we established. It's the benefit that you obtained. In other words, as opposed to the value you contributed, he could have just made a single phone call and got those approvals. The measure in this case of the approvals is the benefit that you receive. So if you address the benefit, it'd be better. The benefit, Judge, is the flip side of whatever the value is. So if the property didn't increase in value at all, let's just use that as a classroom. If the property did not go up one dime as a result of the work that was done by Mr. Mars, there's there's no claim for unjust enrichment because I think you're right. I think that's right. Yeah. OK, so so in order for us to determine what is unjust enrichment, and by the way, unjust enrichment, that first word about unjust is an equitable concept that's applied to these damage claims, unjust. And so what wound up happening here is Mr. Mars secured a project for 189 condominium units in various buildings. The way the plan was submitted, the court will see it, was there were six four or five story buildings. Those buildings were not going to get built. They were not going to be sold. Everybody agrees, including their experts. And so what winds up happening when it came time to value what Mr. Mars contributed to this effort, if you were going to try to determine what that was, everyone determined that there was no market for that concept. What would have had to have happened was a completely different style. It's called two over twos. It's a variation on townhouse, different concept, different engineering, different site plans, different expenses and all the things that go along with changing this plan. So what winds up happening is when the values have to be assigned or the determination on whatever it was, the measure of the unjust enrichment, we have to switch. We can't use what Mr. Mars brought to the table. Mr. Mars brought 189 condominium units which were unsaleable and undeveloped. So when the issue of unjust enrichment is assigned to this set of facts, every dollar amount, including the 2013 assessment that was done for planning purposes, internal planning purposes, to compare with what the circumstances were in the market to see what kind of products might be available, what kind of products might have public acceptance so that we have people actually buying them. They didn't use 189 condominiums. And when their expert went in, he valued 189 apartments. Now the court, every member of the court recognizes the marked difference in development between 189 apartment units versus 189 condominium units. If you're going to try to value apartment units, that's a build and hold. That means that that investment is not going to be an outsale. It's going to wind up being a property that is held for long term or some other financing structure, but it's certainly not going to be sold to the market. If it's a condominium unit, then the expectation is that the development will take place, there will be outsales of those, and at the end of the process, the seller winds up moving on to something else. The plan that Mr. Marks supposedly brought, the values that were assigned were not for that 189 condominium. In order to do this measure, you've got to figure out what was the value at the time that the property was obtained and what was the added value that Mr. Marks brought to it. Let me ask you, where did the district court get the $4.2 million to conclude that that was the value of the property enhanced by the approvals? In 2013, the appraiser goes in, they're looking for possibilities on what kind of developments might be appropriate, what will meet the market, what can we do in order to have this project become a successful operation? They come in and they use a model. The model was two over twos because the 189 condominium units were not really viable. He comes up with two over twos, and I believe it was 132 units or something like that. It would have required all new engineering, it would have required all new soft costs, it would have required a different site plan. He uses that number and says, if we can make this work, and this is 2013, if we can make this work, this is what you can expect if you get a different kind of land use approval. Now, the court takes that and there are qualifications all over that. It was done for planning purposes, it was not done for any other use. The expert, the appraiser qualified in every which way. When it came time for the appraiser to name on the bottom line as to what it was that the value of the property was on January 1, 2015, his number was 2.45 because he was now using that same calculation of two over twos. When it came time for the plaintiff's expert to come in, he didn't use the value that Mr. Marks had brought because Mr. Marks had 189 condominium units. What the value that they used came in at two over twos, 3.79 million. What winds up happening here for this unjust enrichment, what winds up happening, unjust enrichment is exactly right. If he had gotten the contract value, the contract value would have required 1.89 priority under these agreements. In other words, whatever that value would have been reduced by 1.89. Equity being the critical. What was the value that the record showed as of January 1, 2015? Is that 3.79? That was what their expert said. Your argument is that's the best they can claim for a value as of 2015. Well, actually, that's the evidence they put on. The value of the property at 3.79 million was entitled. That meant that it had been approved and there was a plan for it. The property had not been approved. That 3.79 million included the engineering, the plan submittal, and the approvals from the local authority in order to make that work. So, if I said to you, Judge, that's the number they had, that 3.79 million was not really 3.79 million because the entitlements had a value independent of what the ground was worth. So, from the standpoint, our man, Mr. McPherson comes in and he says it's 2.45 million. He says that's the number, but it's not with 189 condominiums, not with the value that Mr. McPherson has. At no point in time in this whole case has there ever been a fair market value of the property as it is, where it is, in its condition as of the date of the value that's been assigned. I think it would be wrong to measure particular plans. I think the question is, what is the value of the property with the approval that had been obtained? In other words, whoever takes that clearly is going to have to put money into it, but there's a market value for land that is a zone for a particular usage. And the assessment in this case, regardless of carrying out how much cost it would develop, I mean, theoretically, the value of land is determined what would a buyer buy it for with that approval. So the approval is on there to put on. What was the approval for? Two over twos? They never got two over twos at that time. Didn't get two over twos. Then what was the approval? What was the approval? 189 condominium units in multi-story buildings. That's what the approval was, which of course, nobody, nobody, nobody who testified in this case thought that that was a saleable property. Nobody. And the issue here was... The property had any value as of January 1, 2015. And if it had value, what was the value with the approval? Okay. I'm not going to wrestle with you about the approvals because that adds value because it didn't have it. But let's put it in that perspective. The fair market value of the property was typically the way an appraiser would have done his appraisal. That's what's done, as is, where is, willing buyer, willing seller. That's the fair market value. The appraiser was instructed, instructed to not follow that formula. And he was told to assume hypotheticals which were not consistent with what the reality of the situation was. There are standards. They're called USPAP standards, uniform standards of appraisal practice. And the standards are that you use fair market value. Maryland recognizes that in valuing real estate, use as is, where is, in its current state. If you sit there... Okay. In other words, basically, just to give what I think is a summary, you're saying the court did not have sufficient evidence to measure the unjust enrichment. And she admits it. I don't mean to disparage the judge. No, no. But the court did recognize this is an equity matter and it doesn't have to make firm calculations. This is unjust enrichment is an equitable award. And your argument is that she awarded too much. Equity or not. Okay. And if it was quantum error... We're in equity. We're in equity. All right. So let's suppose that this contract didn't have any other damage amount in it. Let's just suppose that you didn't have these alternatives. And Mark's provided... I'm trying to get... You're not helping me because I thought I was trying to understand your argument. But I thought your argument was, if we're awarding unjust enrichment, that there is no evidence or insufficient evidence to measure the value of the property as of January 1, 2015. Yes, sir. Because that was the assumption the improvement of the property from the original value to the after the approvals. And the court concluded as a matter of equity, that improvement was... I don't remember the number of it. I think she winds up at like 1.9 million or something like that. Yeah. Right, right, right. Okay. I think we understand it. Listen, I very much appreciate the court's willingness to let me drone on and I've used my time. It's a pleasure to see all of you. Mr. Diaz or Quattlebaum, do you have any further? I don't. Thank you. I don't either. Thank you. Appreciate the arguments. We've worn out all our time. I'm sorry we held you over. But we appreciate your arguments. Our and greet you. The Fourth Circuit, this is a position that goes way back to the 1930s, and we continue to do it. I know you both practice in the Maryland courts. I've never seen them do it. But it's a nice practice. And so we thank you for your arguments and we'll adjourn court. Thank you, sir. Thank you.
judges: Paul V. Niemeyer, Albert Diaz, A. Marvin Quattlebaum Jr.